## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FADI AL MAQALEH, et al.,**<br><br>**Petitioners,**<br><br>v.<br><br>**ROBERT GATES, et al.,**<br><br>**Respondents.** | **Civil Action No.  06-1669** |
| **AMIN AL BAKRI, et al.,**<br><br>**Petitioners,**<br><br>v.<br><br>**BARACK H. OBAMA, et al.,**<br><br>**Respondents.** | **Civil Action No.  08-1307** |
| **REDHA AL-NAJAR, et al.,**<br><br>**Petitioners,**<br><br>v.<br><br>**ROBERT GATES, et al.,**<br><br>**Respondents.** | **Civil Action No.  08-2143** |

### MEMORANDUM OPINION & ORDER

Before the Court are respondents' motions for certification for interlocutory appeal

pursuant to 28 U.S.C. § 1292(b) and for a stay of proceedings pending appeal.  These motions are

fully briefed and the Court heard oral argument on May 21, 2009.  For the reasons explained

below, both of respondents' motions will be granted.

### I.  Background

The three petitioners in these cases are detained by the United States at Bagram Air Field

in Afghanistan and have been in U.S. custody for more than six years.  Each petitioner seeks to

challenge the legality of his detention through a petition for a writ of habeas corpus.

Respondents filed motions to dismiss each habeas petition on jurisdictional grounds.  They

pointed out that § 7(a) of the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat.

2600 ("MCA"), strips federal district courts of jurisdiction to entertain a habeas petition filed by

"an alien detained by the United States who has been determined by the United States to have

been properly detained as an enemy combatant."  MCA § 7(a) is constitutional, respondents

contended, because petitioners such as these have no right to invoke the Suspension Clause of the

Constitution, Art. I § 9 cl. 2, which permits the suspension of habeas corpus rights in certain

circumstances.  Respondents concluded that absent a statutory basis for habeas jurisdiction, this

Court was required to dismiss these habeas petitions.

On April 2, 2009, this Court denied respondents' motions to dismiss the habeas petitions

filed by these detainees.[1]  In doing so, the Court interpreted and applied the multi-factor test set

forth by the Supreme Court in Boumediene v. Bush, 128 S. Ct. 2229 (2008).  This Court held

that "Bagram detainees who are not Afghan citizens, who were not captured in Afghanistan, and

who have been held for an unreasonable amount of time -- here, over six years -- without

adequate process may invoke the protections of the Suspension Clause."  Al Maqaleh v. Gates,

604 F. Supp. 2d 205, 235 (D.D.C. 2009).  Because MCA § 7(a) does not amount to a valid

---

[1]  The Court did not deny respondents' motion to dismiss the habeas petition filed by Haji
Wazir, an Afghan citizen.  The Court held that Wazir is not entitled to invoke the protections of
the Suspension Clause, and rejected several of his other arguments as to the unconstitutionality of
MCA § 7(a).  The Court determined, however, that it required further briefing to resolve a final
issue raised by Wazir:  whether MCA § 7(a) is unconstitutional under United States v. Klein, 80
U.S. (13 Wall.) 128 (1871), and its progeny.

suspension of the writ of habeas corpus under the Suspension Clause, the Court held that MCA § 7(a) constitutes an unconstitutional suspension of habeas rights as applied to these petitioners. <u>Id.</u>

The April 2 Memorandum Opinion represents the only interpretation and application to date of the multi-factor test established in <u>Boumediene</u>.  All habeas petitions by Bagram detainees have been filed in the U.S. District Court for the District of Columbia, and those petitions were consolidated before the undersigned judge of this Court for determination of the jurisdictional issue.  Thus, no other court (and no other judge of this Court) has had occasion to interpret or apply the <u>Boumediene</u> test to detainees at Bagram.

## II. Motion for Certification for Appeal

Certification for interlocutory appeal is governed by 28 U.S.C. § 1292(b), which permits a district court to certify an order for interlocutory appeal if the court states in writing that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  Interlocutory appeals under § 1292(b) are only warranted in "exceptional circumstances."  <u>See</u> <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 475 (1978); <u>see also</u> <u>Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group</u>, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) ("A party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the 'strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals.'") (quoting <u>United States v. Nixon</u>, 418 U.S. 683, 690 (1974)).  Here, petitioners do not dispute that the jurisdictional issues at the heart of the Court's April 2 Memorandum Opinion involve "controlling question[s] of

law."  Instead, petitioners contend that the requirements of § 1292(b) are not satisfied because (1)

these cases do not present "substantial ground[s] for difference of opinion" and (2) certification

of appeal will not "materially advance the ultimate termination of the litigation."

      The first issue, then, is whether there are substantial grounds for difference of opinion.

Respondents argue that several aspects of the Court's Memorandum Opinion present grounds for

difference of opinion.  They assert, for example, that the Court misinterpreted <u>Boumediene</u> in

conducting its analysis of U.S. control and jurisdiction at Bagram.  <u>See</u> Resps.' Mot. at 6.

Petitioners point out that respondents essentially repeat their previous litigation position

regarding U.S. control and jurisdiction, and a party's own disagreement with a district court's

conclusion does not constitute "substantial ground[s] for difference of opinion."  <u>See</u> Pet'rs' Opp.

at 6-8.  Petitioners argue that a conflict is needed to satisfy this aspect of § 1292(b) -- either

between judges on the same court or between circuits.

      Of course, the kind of conflict petitioners maintain is necessary could not have arisen

here.  All habeas petitions by Bagram detainees pending in the U.S. District Court for the District

of Columbia were consolidated before this judge for determination of the jurisdictional issue, and

no Bagram detainee has filed a habeas petition in any other federal district court.  To be sure, a

restatement of a party's litigation position would not normally raise substantial grounds for

difference of opinion under § 1292(b).  But these cases present extraordinary circumstances.

This Court's interpretation and application of <u>Boumediene</u> was not the mechanical, routine task

petitioners apparently take it to have been.  Although this Court believes that its conclusions are

correct, given the novelty of the issues courts could reasonably differ in the application of the

multi-factor <u>Boumediene</u> test to the Bagram Theater Internment Facility.  Hence, the Court finds

that the first requirement of § 1292(b) -- that the case "involves . . . controlling question[s] of law as to which there [are] substantial ground[s] for difference of opinion" -- is satisfied.

The second issue is whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  <u>See</u> § 1292(b).  If this Court is reversed on appeal, then these cases will be terminated (unless further appeal is sought).  Petitioners argue that if this Court is <u>not</u> reversed, then the ultimate termination of the litigation will be protracted, not advanced, by the appeal.  <u>See</u> Pet'rs' Opp. at 8-12.  Ultimate termination of this litigation will be hastened, petitioners contend, if these cases proceed to determinations on their merits now. Should respondents seek to challenge this Court's interpretation and application of <u>Boumediene</u>, they may do so at the conclusion of a merits determination.

When there are substantial grounds for difference of opinion as to a court's subject matter jurisdiction, courts regularly hold that immediate appeal may "materially advance the ultimate termination of the litigation."  <u>See, e.g.</u>, <u>APCC Servs., Inc. v. AT&T Corp.</u>, 297 F. Supp. 2d 101, 109 (D.D.C. 2003) ("[A]lthough plaintiffs argue correctly that they will be prejudiced by further delays, in the event that it is ultimately found that this Court lacks jurisdiction to litigate these cases, it would be far better for all concerned, including plaintiffs, to have these matters resolved now, as opposed to sometime in the distant future."); <u>Lemery v. Ford Motor Co.</u>, 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002) ("It would pain the Court to see both attorneys . . . [and parties] proceed to judgment after considerable expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks subject matter jurisdiction."). Moreover, interlocutory appeal is warranted where the jurisdictional determination will impact numerous cases.  <u>See</u> <u>Klinghoffer v. S.N.C. Achille Lauro</u>, 921 F.2d 21, 24 (2d Cir. 1990).  Here,

the Court has already determined that federal district courts have jurisdiction to hear these three

pending cases, and additional cases might be filed by other Bagram detainees in U.S. custody as

well.  Hence, the Court agrees with cases like <u>APCC Services</u>, which conclude that an appeal as

to a court's subject matter jurisdiction may "materially advance the ultimate termination of the

litigation."

In sum, the requirements of § 1292(b) are satisfied here.  These cases present the kind of

extraordinary jurisdictional issue suitable for certification for interlocutory appeal.  Accordingly,

respondents' motion for certification for interlocutory appeal will be granted.

### III.  Motion for Stay Pending Appeal

To prevail on a motion for a stay pending appeal, a party must show:  (1) a likelihood of

prevailing on the merits of its appeal; (2) that it will suffer irreparable injury absent the stay; (3)

that the non-moving party will not be harmed by the issuance of a stay; and (4) that the public

interest will be served by a stay.  <u>United States v. Philip Morris, Inc.</u>, 314 F.3d 612, 617 (D.C.

Cir. 2003) (citing <u>Washington Metropolitan Area Transit Commission v. Holiday Tours, Ind.</u>,

559 F.2d 841, 843 (D.C. Cir. 1977)).  "These factors interrelate on a sliding scale and must be

balanced against each other."  <u>Serono Laboratories, Inc. v. Shalala</u>, 158 F.3d 1313, 1318 (D.C.

Cir. 1998).  "The test is a flexible one [and] [i]njunctive relief may be granted with either a high

likelihood of success and some injury, or vice versa."  <u>Cuomo v. U.S. Nuclear Regulatory

Comm'n</u>, 772 F.2d 972, 974 (D.C. Cir. 1985).  "If the arguments for one factor are particularly

strong, an injunction may issue even if the arguments in other areas are rather weak."  <u>CityFed

Fin. Corp. v. Office of Thrift Supervision</u>, 58 F.3d 738, 746 (D.C. Cir. 1995).  Still, a stay

pending appeal -- like other injunctive relief -- is "an extraordinary remedy."  <u>Cuomo</u>, 772 F.2d at

978.

As to the first factor, the moving party need not establish "an absolute certainty of success"; rather, "[i]t will ordinarily be enough that the [movant] has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation . . . ." Population Inst. v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (quoting Holiday Tours, 559 F.2d at 844). The Court has already determined that these cases present issues as to which there is "a substantial ground for difference of opinion" for purposes of certification for interlocutory appeal. The issues presented are novel and weighty -- fundamental constitutional questions are presented. It follows, then, that these cases present "serious legal questions . . . [that are] so serious, substantial, [and] difficult as to make them a fair ground for litigation." See id. Hence, the first factor squarely favors respondents.

The second factor, irreparable injury to respondents, presents a closer question. Respondents argue that proceeding with these cases during the pendency of an appeal would impose irreparable harm on them (i.e., on the United States) because the discovery process, including the compilation of factual returns, would likely divert the military from its mission in Afghanistan and potentially put U.S. personnel in harm's way. See Resps.' Mot. at 8-12. Petitioners counter that this Court has already determined that the practical obstacles of litigating these habeas cases are not so great as to defeat jurisdiction under Boumediene, and hence they should not be so great as to warrant a stay pending appeal. See Pet'rs' Opp. at 17-20.

Although petitioners' argument has some superficial appeal, an analysis of harm to the moving party for consideration of a stay is very different from analysis of Boumediene's "practical obstacles" factor. Whether practical obstacles are so great as to defeat a petitioner's

claim to a constitutional right is a qualitatively different question than whether discovery-related

harms are sufficiently great and irreparable as to justify a stay pending appeal.  Moreover,

reaching the conclusion that practical obstacles of providing habeas review are not so great as to

defeat jurisdiction as a constitutional matter was not the facile task petitioners take it to have

been.  Indeed, the Court repeatedly noted Boumediene's observation that practical obstacles are

enhanced when a detention facility is located in an active theater of war and concluded that

practical obstacles were sufficient to defeat the extension of the Suspension Clause to Wazir, an

Afghan citizen.  See Al Maqaleh, 604 F. Supp. 2d at 230-31.

The discovery-related harms respondents anticipate are "both certain and great."  See

Wisconsin Gas v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  In producing discovery from

Bagram, an active military zone, and modifying facilities at Bagram to allow for litigation of

habeas cases, respondents will be required to divert at least some of the military's resources from

their core missions in Afghanistan.  Hence, even if the practical obstacles are not so great as to

defeat jurisdiction, the harm is still sufficient to weigh in favor of a stay, and thus the second

factor favors respondents.

The third factor assesses the harm to the non-moving party, and offsets the second factor

here.  Respondents argue that any harm to petitioners is minimized because respondents intend to

seek expedited appellate review and because the President, pursuant to Executive Order 13,493,

74 Fed. Reg. 4901 (Jan. 22, 2009), has created a task force that is conducting a comprehensive

review of detention policies.  See Resps.' Mot. at 13.  Although the Court does not doubt

respondents' representation that they intend to seek expedited appellate review, it is worth noting

that the decision to grant expedited review lies with the court of appeals, not respondents.

Moreover, petitioners correctly point out that before issuing its April 2 Memorandum Opinion, this Court expressly gave the President an opportunity to refine his position in February 2009. Respondents declined that opportunity then, and hence their argument now that future policy changes proposed by the President should inform this Court's resolution of their motion for a stay pending appeal falls flat.  The harm to petitioners should a stay be granted -- continued detention -- is clear and substantial whatever the justification for detention.  The third factor, then, weighs in favor of petitioners.

Both parties have strong arguments as to the fourth factor -- the public interest. Respondents point out that the public has an interest in the President being able to wage war without court-imposed burdens.  See Resps.' Mot. at 12-13.  Petitioners, on the other hand, maintain that there is a weighty public interest in ensuring that constitutional rights are vindicated and that the President does not usurp the powers of coordinate branches.  Pet'rs' Opp. at 20.  As in many cases implicating constitutional considerations, both arguments have merit. See, e.g., Jewish War Veterans of the United States v. Gates, 522 F. Supp. 2d 73, 82-83 (D.D.C. 2007).  Indeed, their positions simply reflect their opposing views on those important issues. Hence, this factor does not favor either party.

On balance, the Court concludes that a stay pending appeal is warranted here.  To be sure, a stay pending appeal is "an extraordinary remedy."  See Cuomo, 772 F.2d at 978.  But these are extraordinary cases of significant national and international interest.  This Court's interpretation of Boumediene was not the mechanical application of an established test.  Rather, reasonable courts could differ as to how certain factors should be interpreted and what weight each factor is due.  The constitutional issues presented are consequential and fundamental:  at stake are

separation of powers considerations, the President's authority to wage war abroad free from judicial scrutiny, and the constitutional rights of certain aliens detained abroad indefinitely by the United States.  As noted above, then, the first factor squarely factors respondents.

The remaining factors -- the balance of interests -- are in equipoise.  Although petitioners have a persuasive argument that the public interest favors denial of a stay pending appeal, respondents have an equally persuasive argument that the public interest demands a stay. Similarly, although petitioners argue convincingly that they will suffer the quintessential substantial, irreparable harm -- continued incarceration -- should these cases be stayed, respondents have an equally convincing argument that the United States will suffer irreparable harms to vital national interests should these cases proceed during the pendency of appeal. Because the second, third, and fourth factors effectively cancel each other out, the Court is left with the first factor, which, as discussed above, squarely favors respondents.  When "the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."  CityFed Fin. Corp., 58 F.3d at 746.  Here, the balance of interests does not provide a clear answer on the stay issue, but there is no legitimate dispute that the jurisdictional issue is an extremely serious one on which courts reasonably could differ. Accordingly, respondents' motion for a stay pending appeal will be granted.

## IV.  Conclusion

It is hereby **ORDERED** that respondents' motion for certification for interlocutory appeal of Al Maqaleh v. Gates, 604 F. Supp. 2d 205 (D.D.C. 2009), is **GRANTED** and the order is certified for immediate appeal pursuant to 28 U.S.C. § 1292(b).

-10-

It is further **ORDERED** that respondents' motion for a stay pending appeal is

**GRANTED**.

SO ORDERED.

/s/
_____
JOHN D. BATES
United States District Judge

Date: ___June 1, 2009___