# Declaration of Ramzi Kassem
# (dated June 22, 2011)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FADI AL-MAQALEH,** ***et al.*****,**<br>**Petitioners,**<br>**v.**<br>**BARACK H. OBAMA,** ***et al.*****,**<br>**Respondents.** | **Civil Action No. 06-1669 (JDB)** |
| **AMIN AL-BAKRI,** ***et al.*****,**<br>**Petitioners,**<br>**v.**<br>**BARACK H. OBAMA,** ***et al.*****,**<br>**Respondents.** | **Civil Action No. 08-1307 (JDB)** |
| **REDHA AL-NAJAR,** ***et al.*****,**<br>**Petitioners,**<br>**v.**<br>**BARACK H. OBAMA,** ***et al.*****,**<br>**Respondents.** | **Civil Action No. 08-2143 (JDB)** |

**DECLARATION OF RAMZI KASSEM**

Pursuant to 28 U.S.C. § 1746, I certify that the following is true and correct to the best of my knowledge:

1. My name is Ramzi Kassem. I am an attorney admitted to practice law in the State of New York.

2. I am lead counsel to Petitioner Amin al-Bakri and present this declaration in support of Petitioners' Opposition to Respondents' Motion to Dismiss Amended Petitions for Lack of Subject Matter Jurisdiction in the above-captioned matters.

3. Mr. al-Bakri has been in U.S. custody since his abduction in Thailand in December 2002, and he has been in U.S. military custody at Bagram Air Base, Afghanistan, since 2003.

4. In February 2010, I learned that Mr. al-Bakri was scheduled to appear before his first Detainee Review Board (DRB). My co-counsel and I wrote the Attorney General of the United States and the General Counsel to the U.S. Department of Defense, requesting an opportunity to confer telephonically with Mr. al-Bakri ahead of his DRB, pursuant to his wishes. *See* Attachment 1, Feb. 3, 2010 Letter to Messrs. Eric Holder and Jeh Johnson.

5. In a response received weeks later, counsel for Respondents confirmed that Mr. al-Bakri's first DRB took place a week after our letter was sent, and indicated that our request would not be honored as our client had no right to representation by counsel before the DRB or otherwise. *See* Attachment 2, Mar. 1, 2010 USDOJ Letter to Counsel.

6. On October 6, 2010, I learned that a high-ranking U.S. military official had approved Mr. al-Bakri on March 27, 2010 for designation as an "Enduring Security Threat." Indeed, a Department of Defense memorandum produced in litigation under the Freedom of Information Act to the American Civil Liberties Union on October 1, 2010 and obtained by me on October 6, 2010 reveals approval on March 27, 2010 by a high-ranking U.S. military official of a recommendation by a DRB convened on February 10, 2010 that Mr. al-Bakri "be assessed as an Enduring Security Threat." In this document, Mr. al-Bakri is identified by the Internment Serial Number (ISN) that the U.S. military assigned him at Bagram: ISN 1464. *See* Attachment 3, Mar. 27, 2010 Mem. Re: ISN 1464 for Commander, Task Force Protector, Bagram Airfield, Afghanistan.

7. U.S. officials have indicated that detainees labeled "Enduring Security Threats" are among those the U.S. government wishes to retain indefinitely in its custody at the Detention Facility in Parwan, at Bagram Air Base, Afghanistan.

8. On February 14, 2011, I received an email from a U.S. military officer at Bagram. This email stated that a DRB had approved Mr. al-Bakri for release in August 2010 but that another DRB would nonetheless reconvene on February 17, 2011, to once again review Mr. al-Bakri's detention. The August 2010 DRB was Mr. al-Bakri's second; the February 2011 DRB was to be his third. The email asked whether I would be able to "participate" in the DRB on February 17, 2011, and whether I would be able to speak by telephone on February 15, 2011 with the military Personal Representative assigned to Mr. al-Bakri for the impending review. *See* Attachment 4, Feb. 14, 2011 Email from Col. Margaret S. Bond to Counsel.

9. On February 15, 2011, I spoke by telephone with the Personal Representative assigned to Mr. al-Bakri. The Personal Representative emphasized that I would not be allowed to act as counsel in any way before the DRB on February 17. My intervention would be only in the capacity of witness, and my testimony would be limited to (i) the ability of Mr. al-Bakri's family to support him in the event of his release, (ii) the willingness of the Yemeni government to accept Mr. al-Bakri's repatriation or resettlement, and (iii) Mr. al-Bakri's activities prior to his detention.

10. The Personal Representative indicated that the three military officers on the February 17 DRB panel would have complete discretion to narrow their inquiry, possibly to the point of restricting the time allotted my testimony or dispensing with it altogether.

11. When I asked the Personal Representative why the DRB needed to reconvene at all if Mr. al-Bakri had been approved for release in August 2010, the Personal Representative responded that the review was mandatory and that the panel could theoretically reverse its prior determination regarding Mr. al-Bakri.

12. The Personal Representative agreed to review and relay documents my team wished to send by email, provided those materials were related to the three aforementioned areas and were sent by February 17, 2011. Accordingly, I emailed the Personal Representative a letter by counsel, *see* Attachment 5, Feb. 17, 2011 Letter to DRB Members, and another letter from Mr. al-Bakri's father and his brother. *See* Attachment 6, Feb. 16, 2011 al-Bakri Family Letter to DRB Members.

13. In an email sent on February 16, 2011, the Personal Representative reiterated that my intervention on February 17 was not guaranteed and would be at the complete discretion of the DRB president. The email also restated that any intervention would be strictly testimonial and that I would not be allowed to act in my capacity as counsel. *See* Attachment 7, Feb. 16, 2011 Email from Lt. Todd M. Beatty to Counsel.

14. On February 17, 2011, the DRB panel in Afghanistan initiated the telephone call to my office. I was sworn in by an officer, and then the Personal Representative asked discrete questions along the lines we had previously discussed. After some additional questioning by the panel members, the call ended.

15. Shortly thereafter, the Personal Representative called my office again. He indicated that Mr. al-Bakri wished to ask me some follow-up questions. My testimony in response to those questions was brief, lasting for a matter of minutes, after which the call was terminated.

16. During this process, I learned that U.S. personnel at the detention facilities at Bagram, to include the prisoners' personal representatives and DRB members, are unable to place telephone calls to witnesses located outside of Afghanistan or the United States. This troubled me deeply because my client is a non-Afghan apprehended outside of Afghanistan, with no significant ties to the United States. Accordingly, almost all of the relevant witnesses in his case would be outside of Afghanistan and the United States and therefore could not be reached for testimony before the DRB.

17. Indeed, ahead of his third DRB in February 2011, Mr. al-Bakri had requested testimony by Khaled al-Kathiri, Political Officer at the Embassy of the Republic of Yemen in Washington, D.C. As a witness before the DRB, Mr. al-Kathiri would have reiterated that the Yemeni Government welcomed the immediate repatriation of Mr. al-Bakri and did not object to his resettlement in a suitable third country. No lower an authority than the Yemeni Minister of Foreign Affairs had already issued a written statement to that effect, obtained by counsel, as early as November 2009. *See* Attachment 8, Nov. 11,

2009 Letter from Abu Bakr Abdullah al-Qirbi, Minister of Foreign Affairs, Republic of Yemen.

18. Mr. al-Kathiri was traveling on official business in Yemen at the time of the February 2011 DRB and waited in vain for a call from the DRB in order to testify telephonically from Yemen. Mr. al-Kathiri contacted me and asked me to inquire about his testimony. In her response, the military officer I was in contact with at Bagram explained that personnel at U.S. detention facilities at Bagram were unable to call witnesses outside of the United States or Afghanistan. *See* Attachment 9, Feb. 17, 2011 Email from Col. Margaret S. Bond to Counsel. In all of my interactions with her, the officer in question was exceedingly courteous, diligent, and responsive, but this matter appeared to be beyond her control.

19. Over the years, Mr. al-Bakri has communicated, through his father and next friend, Muhammed al-Bakri, his desire to be represented by counsel at any military proceedings. Accordingly, I have repeatedly requested access to my client, but my requests have been consistently denied by the U.S. government.

20. The DRB on February 17, 2011, was no exception. I was not permitted a privileged, unmonitored conversation with my client, nor were we even allowed to prepare for my intervention as a witness.

21. Neither I nor Mr. al-Bakri was afforded an opportunity to review the classified evidence regarding Mr. al-Bakri that was before the DRB panel. Despite my security clearance, I was not permitted to intervene in or listen to the closed, classified portion of the DRB proceeding. I was not privy to any hearsay evidence that the DRB may have considered. If the DRB relied on statements reportedly made by Mr. al-Bakri himself, I do not know whether the Personal Representative raised the very high likelihood that such statements were obtained as a result of coercive interrogation.

22. Following the February 17, 2011 DRB, I received no communication from the U.S. government indicating what determination, if any, the DRB may have reached regarding Mr. al-Bakri. It was only in their latest filing in this litigation that Respondents included a declaration by Vice Admiral Robert S. Harward purporting to reflect the determination of U.S. forces in my client's regard.

23. In April 2011, Mr. al-Bakri's family relayed to me a document they had received from Mr. al-Bakri himself. The document, titled "DRB Results Notice" and dated October 31, 2010, further confirmed what I had earlier learned from the aforementioned February 14, 2011 email from Bagram: the August 2010 DRB had approved Mr. al-Bakri for release and repatriation. In this document, Mr. al-Bakri is identified only by a thumbprint and the Internment Serial Number (ISN) that the U.S. military assigned him at Bagram: ISN 1464. *See* Attachment 10, Oct. 31, 2010 DRB Results Notice for ISN 1464.

24. On June 6, 2011, I learned that a high-ranking U.S. military official had approved Petitioner Fadi al-Maqaleh on or about December 24, 2009 for designation as an

"Enduring Security Threat." Indeed, a Department of Defense memorandum produced in litigation under the Freedom of Information Act to the American Civil Liberties Union, which I obtained on June 6, 2011, reveals approval on or about December 24, 2009 by a high-ranking U.S. military official of a recommendation by a DRB convened on December 9, 2009 that Mr. al-Maqaleh "continue to be detained at the Bagram Theater Internment Facility as an Enduring Security [T]hreat." In this document, Mr. al-Maqaleh is identified by the Internment Serial Number (ISN) that the U.S. military assigned him at Bagram: ISN 1815. *See* Attachment 11, Mem. Re: ISN 1815 for Commander, Task Force Protector, Bagram Airfield, Afghanistan.

25. On June 6, 2011, I also learned that a high-ranking U.S. military official had approved Petitioner Redha al-Najar on December 24, 2009 for designation as an "Enduring Security Threat." Indeed, a Department of Defense memorandum produced in litigation under the Freedom of Information Act to the American Civil Liberties Union, which I obtained on June 6, 2011, reveals approval on December 24, 2009 by a high-ranking U.S. military official of a recommendation by a DRB convened on December 2, 2009 that Mr. al-Najar "continue to be detained at the Bagram Theater Internment Facility as an Enduring Security [T]hreat." In this document, Mr. al-Najar is identified by the Internment Serial Number (ISN) that the U.S. military assigned him at Bagram: ISN 1466. *See* Attachment 12, Mem. Re: ISN 1466 for Commander, Task Force Protector, Bagram Airfield, Afghanistan.

26. My client, Amin al-Bakri, and fellow Petitioners Fadi al-Maqaleh and Redha al-Najar, remain imprisoned. They have been held by the U.S. government for almost a decade, without charge, without access to their legal counsel, without access to the evidence against them, and still with no meaningful opportunity to challenge the basis of their detention.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

New York, NY

Executed on this 22nd day of June, 2011

____/s/_________________
RAMZI KASSEM

# ATTACHMENT 1

**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

**MAIN STREET LEGAL SERVICES, INC.**
*City University of New York School of Law*
65-21 Main Street, Flushing, New York 11367

Yale Law School
Allard K. Lowenstein International
Human Rights Clinic
National Litigation Project

February 3, 2010

The Hon. Eric H. Holder, Jr.
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

The Hon. Jeh C. Johnson
General Counsel
U.S. Department of Defense
1600 Defense Pentagon, Room 3E788
Washington, D.C. 20301-1600

**Re: Amin al-Bakri, prisoner at U.S. Air Force Base, Bagram, Afghanistan**
**Habeas petitioner in *Al-Bakri v. Obama*, No. 08-cv-1307 (D.D.C.)**
**On appeal in *Al-Maqaleh v. Gates*, No. 09-5265 (D.C. Cir.)**

Dear Attorney General Holder and Mr. Johnson:

As the Department of Justice and Respondents in the above-referenced matters are undoubtedly aware, Amin al-Bakri is represented by undersigned counsel in all matters relating to his detention and imprisonment by the U.S. government. Although Mr. al-Bakri has clearly expressed, through his family, his desire to communicate with his attorney Ramzi Kassem, Respondents have deprived him of access to counsel for a period exceeding seven years. Moreover, Respondents have now sequestered him in solitary confinement.

It has come to our attention that the U.S. military has informed Mr. al-Bakri that he is to appear before a Detainee Review Board (DRB) on or around February 10, 2010. As detailed in recent legal pleadings submitted on Mr. al-Bakri's behalf to the Court of Appeals for the D.C. Circuit, the DRBs are inadequate, extralegal proceedings that fall well short of affording even basic guarantees. Indeed, the "personal representatives" the military assigns to prisoners under the DRB scheme are not attorneys, and are therefore not bound by any duty of confidentiality, zealous advocacy, or loyalty to the prisoner. DRBs permit the use of evidence obtained through torture or coercion to support a status determination, and apply unfair admissibility standards that permit incomplete and inaccurate evidence while denying prisoners access to much of the evidence introduced against them. Finally, although DRB proceedings are grossly unfair, their determinations are not subject to review by a court of law.

We request that the U.S. government afford Mr. al-Bakri's counsel, Ramzi Kassem, an opportunity to confer with Mr. al-Bakri by telephone in advance of any DRB proceeding. Though the U.S. government has refused to allow undersigned counsel any contact with our client, it is our understanding that Mr. al-Bakri wishes to confer with Mr. Kassem ahead of any proceeding and that he does not wish to be represented before the DRB or any other forum by the U.S. military's "personal representative" in lieu of his actual attorneys.

Given the time-sensitive nature of this request, we look forward to your prompt reply.

Sincerely,

Ramzi Kassem
Main Street Legal Services, Inc.
City University of New York School of Law

Hope Metcalf
National Litigation Project
Lowenstein Int'l Human Rights Clinic
Yale Law School

cc: Jean Lin, Esq.
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Suite 7218
Washington, D.C. 20530

Robert M. Loeb, Esq.
Attorney, Appellate Staff
Civil Division, Room 7513
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Dr. James N. Miller
Principal Deputy Under Secretary of Defense for Policy
U.S. Department of Defense
2100 Defense Pentagon, Room 3E806
Washington, D.C. 20301-2100

# ATTACHMENT 2

**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

**U.S. Department of Justice**

Civil Division
Washington, D.C. 20530

March 1, 2010

**Via Electronic Mail**

Ramzi Kassem, Esq.
Main Street Legal Services, Inc.
City University of New York School of Law

Hope Metcalf, Esq.
National Litigation Project
Lowenstein Int'l Human Rights Clinic
Yale Law School

Dear Mr. Kassem and Ms. Hope:

We write in response to your letter dated February 3, 2010 and addressed to the Attorney General and General Counsel of the Department of Defense ("DoD"). Your letter requested an opportunity to confer by telephone with your client, Mr. Amin Al-Bakri, a detainee at Bagram Airfield in Afghanistan, prior to Mr. al-Bakri's Detainee Review Board ("DRB").

It is our understanding that Mr. al-Bakri's DRB occurred on February 9, 2010. DRBs are administrative proceedings for which DoD has not authorized representation by counsel. Nor do the detainees have an independent right to counsel in those proceedings. To the extent your request is based on Mr. al-Bakri's pending *habeas* litigation, it is the Government's position, as fully set forth in our briefs, that there is no *habeas* jurisdiction and no right to counsel. As you are also aware, the District Court has stayed its contrary ruling pending appeal, in part due to the potential burden on DoD if DoD is required to facilitating counsel access, including phone calls.

Let us know if you have any additional questions. We note that if you have any written materials you wish to submit to DoD regarding Mr. al-Bakri, we would be happy to forward them to DoD.

Sincerely yours,

/s/

Robert M. Loeb
Appellate Staff
Civil Division
Department of Justice
905 Pennsylvania Ave., N.W.
Washington, DC 20530

/s/

Jean Lin
Federal Programs Branch
Civil Division
20 Massachusetts Ave., N.W.
Washington, DC 20530
Department of Justice

# ATTACHMENT 3

**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

UNCLASSIFIED//~~FOUO~~

**DEPARTMENT OF DEFENSE**
DEPUTY COMMANDER – DETAINEE OPERATIONS
US FORCES AFGHANISTAN
JOINT TASK FORCE 435
APO AE 09356

REPLY TO
ATTENTION OF:
JTF-435-LO

MAR 27 ...

MEMORANDUM FOR Commander, Task Force Protector, Bagram Airfield, Afghanistan, APO AE 09354

SUBJECT: 10 February 2010 Detainee Review Board (DRB) Recommendation for Continued Internment Approval/Disapproval for ISN 1464

1. I reviewed the findings and recommendation of the DRB conducted on 10 February 2010 concerning the internment of Detainee ISN 1464. After consideration, the DRB's recommendation that ISN 1464 continue to be detained at the Detention Facility in Parwan is approved.

2. Further, the DRB's recommendation that ISN 1464 be assessed as an Enduring Security Threat is approved.

3. The point of contact for this memorandum is CAPT [redacted], Director of Legal Operations, JTF 435, at DSN [redacted]

MARK S. MARTINS
Brigadier General, U.S. Army
Deputy Commander

UNCLASSIFIED//~~FOUO~~

# ATTACHMENT 4

**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

-----Original Message-----
From: Bond, Margaret S USA COL USA DFIP
Sent: Monday, February 14, 2011 9:33 AM
To: ramzi.kassem@mail.law.cuny.edu
Cc: Beatty, Todd M USN LT JTF 435
Subject: Amin Al Bakri (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

Good morning, Professor Kassem:

I am writing to follow up on the phone message I left at Main Street Legal Services earlier today. Would you be available for a telephone conversation concerning the matters below tomorrow morning, 15 February, some time between 8:30 and 9:30 AM? It's easier for us to call you than for you to make an international phone call here.

I am working with LT Todd Beatty, personal representative for Mr. Amin Al Bakri, in his upcoming Detention Review Board (DRB) at Parwan, Afghanistan. I have reviewed your 1 September 2010 Amended Petition for Writ of Habeas Corpus and took note that you stated Mr. Al Bakri requested your participation in his DRB. His next DRB is set for 17 February. Can you participate? We can arrange for your telephonic testimony or statement and can adjust the time of the DRB to accommodate our 9.5 hour time difference between Afghanistan and the East Coast.

It would be advantageous for us to talk beforehand to review Mr. Al Bakri's case and how best to facilitate your input. You should know, Mr. Al Bakri was approved for release and repatriation to Yemen at this last DRB in August. We received a letter from the Ambassador to Yemen in Pakistan requesting Mr. Al Bakri and another Yemeni detainee be transferred to the Embassy of Yemen in Islamabad for repatriation to Yemen. I have attempted to contact this Ambassador as well as the Political Officer at the Embassy of Yemen in Washington to participate in Mr. Al Bakri's DRB and confirm the Republic of Yemen still requests his return. However, to date, neither has responded.

Thank you very much for your consideration; we look forward to discussing this matter further with you.

Sincerely,

Colonel Margaret S. Bond
Judge Advocate, USAR
Afghan Civilian Liaison
Legal Operations Directorate
Detention Facility in Parwan.
Classification: UNCLASSIFIED
Caveats: FOUO

# ATTACHMENT 5

**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

**MAIN STREET LEGAL SERVICES, INC.**
*City University of New York School of Law*
65-21 Main Street, Flushing, New York 11367

February 17, 2011

**VIA EMAIL**
Detainee Review Board
Detention Facility in Parwan
U.S. Airbase at Bagram
Afghanistan

**Re: Amin al-Bakri (ISN 1464)—17 February 2011 Detainee Review Board**

Esteemed Detainee Review Board Members:

I am an attorney admitted to practice law in the State of New York and a member of the faculty at the City University of New York School of Law. Along with my students and colleagues, I represent Amin al-Bakri, a prisoner at Bagram Airbase, Afghanistan, to whom the U.S. military has assigned Internment Serial Number (ISN) 1464. Through his father and next friend, Muhammad al-Bakri, I have filed and continue to litigate a habeas corpus petition in Amin al-Bakri's name in U.S. federal court, challenging his indefinite imprisonment at Bagram without charge or process.[1]

Since the start of that litigation on Mr. al-Bakri's behalf in 2008, I have repeatedly asked counsel for the U.S. government to permit me to meet or communicate with Mr. al-Bakri. More recently, I have requested to participate as counsel in Mr. al-Bakri's Detainee Review Board (DRB) proceedings, consistent with his wishes as I understand them. My requests were repeatedly denied and I was told that Mr. al-Bakri did not have a right to counsel. Though I am still not permitted to confer with my client, I wish to commend Colonel Margaret S. Bond and Lieutenant Todd M. Beatty for facilitating my participation as a witness for Mr. al-Bakri at his third DRB proceeding, on February 17, 2011.

While I am grateful for the opportunity to provide some testimony on behalf of my client in partial satisfaction of his instructions, I must note that neither I nor Mr. al-Bakri have been afforded access to the evidence, if any, in connection with this proceeding. It is my understanding that much of the evidence is classified and therefore cannot be shown Mr. al-Bakri. Notwithstanding my security clearance, I have not been afforded an opportunity to review that part of the record, either. Only Mr. al-Bakri's "personal representative" has been allowed

[1] Over the U.S. government's objection, the Court has now granted Mr. al-Bakri's motion to amend his habeas petition, permitting him to proceed with his case. *See* Mem. Op., *Al Maqaleh v. Gates*, No. 06-CV-1669 (D.D.C. Feb. 15, 2011) (attachment 1).

(t) 718.340.4558
(f) 718.340.4455
(e) ramzi.kassem@mail.law.cuny.edu

CU
NY

such access, although that military officer is not permitted to act as Mr. al-Bakri's counsel and is not bound by privilege and confidentiality.

On February 14, 2011, I was notified that Mr. al-Bakri's last DRB hearing, held in August 2010, resulted in a determination that he was eligible for release from U.S. custody. Although it comes almost a decade late, I applaud the Board for reaching the right conclusion and submit this written testimony today to encourage expeditious implementation of that determination, so that the al-Bakri family's ordeal may finally come to an end.

Mr. al-Bakri is the father of two sons, ages 19 and 15, and a daughter, age 13. He and his wife have been married for twenty-three years. Mr. al-Bakri has the unwavering support of his parents as well as a large extended family, all of whom are deeply concerned for his welfare. Before Mr. al-Bakri was imprisoned, he lived in Yemen with his family, where he was a successful businessman trading in precious stones and shrimp. Mr. al-Bakri traveled frequently throughout Southeast Asia for business, primarily to Thailand, Malaysia, and Indonesia. A peaceful entrepreneur and family man, Mr. al-Bakri never should have been taken into U.S. custody.

Mr. al-Bakri was seized in late-December 2002, at the end of a five-day business trip in Bangkok, Thailand. He had checked out of his hotel to fly home to his family in Yemen, to celebrate his 40th birthday. For months, Mr. al-Bakri's parents, siblings, wife, children and other members of his family and community had no idea what had happened to him. Six months after his abduction, Mr. al-Bakri's family received a postcard in his handwriting, sent from Bagram Airbase through the International Committee of the Red Cross, asking his relatives to look after his children.

Before he was confined at Bagram, it is my understanding that Mr. al-Bakri was transported to various secret prisons operated at the time by the CIA, where he was subjected to abusive interrogation techniques. Conditions at Bagram when he arrived there were also unlawfully harsh. As a result of his confinement in U.S. custody, Mr. al-Bakri has suffered severe injuries to his back and knees. But his suffering extends beyond physical injuries: he has been held incommunicado for much of the last eight years and does not know when he will be reunited with his family.

Despite all that Mr. Al-Bakri has been through, he has consistently assisted his U.S. military captors, using his fluency in many languages to interpret conversations and mediate disputes between prisoners and guards. Indeed, Mr. al-Bakri was never a threat to the United States and, upon his release from U.S. custody pursuant to the August 2010 Board determination, he will not become a threat to the United States.

The al-Bakri family is prosperously established in both Yemen and Saudi Arabia. The head of the al-Bakri family, my client's father, is willing to vouch and guarantee that his son will lead a peaceful life once he is reunited with his family. I have visited and communicated with the al-Bakri family on numerous occasions and observed that they are amply able to provide for all of Mr. al-Bakri's needs as well as his wife and children's, be it in Yemen, in Saudi Arabia, or in any other country. The family's advantageous situation would also enable the family to offer

Mr. al-Bakri a job, should he wish to work. The solid and extensive network of financial and emotional support that the al-Bakri family can provide their son will facilitate his speedy and successful reintegration into society, no matter where he is released.

Moreover, the Yemeni government would welcome Mr. al-Bakri's repatriation to Yemen and would not object to Mr. al-Bakri's resettlement in Saudi Arabia, where his parents reside, should that be a preferable solution for the United States. I have provided Lt. Beatty with letters to that effect obtained from high-ranking Yemeni government officials.

In sum, I urge this Board to promptly put into effect the August 2010 DRB determination and release Mr. al-Bakri so he can finally return to his family and resume a normal, peaceful life.

Respectfully,

RAMZI KASSEM
**Main Street Legal Services, Inc.**
**City University of New York**
**School of Law**
65-21 Main Street
Flushing, NY 11367
(718) 340-4558

*Lead Counsel for Amin al-Bakri*

# ATTACHMENT 6
**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

February 16, 2011

Detainee Assistance Center
Re: Amin al-Bakri (ISN 1464)

To Whom It May Concern:

We write in support of the immediate release of Amin al-Bakri, a beloved father, son and husband, who has been held by the United States without charge at Bagram Airbase in Afghanistan since 2003—for nearly eight years. While it is our firm belief that the U.S. government has no right to imprison Amin, we submit this letter and attached information for consideration by the DRB panel in order to hasten Amin's release.

Amin is not and has never been a combatant against the United States. For years, he dealt in precious stones and traded shrimp in Thailand, Malaysia and Indonesia.[1] This work required Amin to travel frequently to Southeast Asia for business, where he met with international colleagues of diverse backgrounds. Amin cannot be expected to know the associations of everyone with whom he would come into contact as a result of his business endeavors.

When he was abducted in Thailand in December 2002, Amin had just concluded a five-day business trip there. He had checked out of his hotel and was headed to the airport to fly back home, eager to celebrate his 40th birthday with us. We were utterly distraught when we did not hear from him—it was unlike Amin to be out of contact with us. His abrupt and complete disappearance for approximately six months was terrifying and heart-wrenching.

We now know that Amin was transported to several locations before being rendered to Bagram, including one or more CIA "black sites," where he was subjected to torture and abuse, resulting in serious injuries. Our family had no news of him and could only fear the worst, until we received a postcard sent through the Red Cross over six months later, informing us that Amin had been moved to the prison at Bagram. Amin is an innocent civilian, imprisoned in the midst of a conflict to which he has absolutely no connection.

Amin has shown extraordinary endurance and compassion over the years toward his fellow prisoners. He has cooperated with the authorities at Bagram, interpreting conversations to and from English and mediating interactions between U.S. officials and other prisoners. Nonetheless, he has only been allowed to communicate with us through infrequent letters and occasional, restricted and monitored telephone calls.

---

[1] We are providing Amin's Commercial Registration Card for Import Merchants, issued by the Undersecretary of Yemen's Ministry of Supply and Trade.

Amin has been married since 1988 and is the bedrock of his family. He has three children: a daughter, age 13, and two sons, ages 15 and 19. They have not seen their father for more than eight years. Amin's elderly parents have been deeply aggrieved by his unjust imprisonment and his continuing absence from their lives. Amin's detention has seriously damaged his father's health. Amin's wife has gone through the past eight years as though half her soul is missing. But we have the greatest concern for Amin's children. Their father's forced disappearance has robbed them of the joy of their childhood.

Understandably, as Amin's loved ones, we are deeply concerned for Amin's wellbeing. Over the last eight years we have taken what steps we could to secure Amin's release. We have been working towards that goal in Yemen, as well as in the United States, where Amin's father, Mohammed al-Bakri, filed a petition for release in federal court on Amin's behalf and also wrote a letter to President Obama, pleading for Amin's release.[2]

The al-Bakri family is well established and prominent—both in Yemen, our country of origin, and in Saudi Arabia, where our family has lived for over four decades. We can readily support Amin and his family, both financially and emotionally, no matter where he is released. The Yemeni government has expressly stated that it would welcome Amin in Yemen and would have no objection whatsoever to his returning to Saudi Arabia.[3]

We respectfully urge the DRB to expedite Amin's release from the nightmare of his unjust and prolonged detention. We hope and believe that this justice can be afforded to Amin, who was mistakenly swept up in America's response to the horrible terrorist attacks of September 11, 2001. The al-Bakri family—Amin's wife, children, parents, siblings, and cousins—long for the day we will be reunited with him.

On behalf of the al-Bakri Family,

Mohammed al-Bakri
(father of Amin al-Bakri)

Khaled al-Bakri
(brother of Amin al-Bakri)

[2] We are enclosing our family letter to President Barack Obama, dated March 25, 2009.
[3] We are providing a letter from Abu Bakr Abdullah al-Qirbi, Foreign Minister of Yemen, stating Yemen's willingness to accept Mr. al-Bakri in Yemen and stating that Yemen has no objection to Amin's return to Saudi Arabia.

# ATTACHMENT 7
**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

-----Original Message-----
From: Beatty, Todd M USN LT JTF 435
Sent: Wednesday, February 16, 2011 10:05 AM
To: ramzi.kassem@mail.law.cuny.edu
Subject: RE: Amin Al Bakri (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Mr. Kassem,

I very much appreciate the documents and your willingness to participate in the process. I spoke with Mr. Al Bakri tonight and he confirmed that he did want you to testify as a witness via telephone for his DRB tomorrow. The DRB is scheduled to begin at 5pm local time, which is 7:30 am EST.

As a witness testifying on the behalf of Mr. Al Bakri, I will ask you questions regarding your personal knowledge of his financial/family support in Yemen (which supports his reintegration into Yemen society), I will ask you to discuss any contact you've had with Yemeni officials and what they have told you regarding their willingness to accept him, and also I will ask about the investigation you did regarding his business affairs prior to his detention. As a reminder, you are not going to be acting in the capacity of Mr. Al Bakri's legal counsel at the DRB, you are going to be a witness that can offer testimony on Mr. Al Bakri's behalf.

I was wondering, do you have any paperwork regarding the results of the investigation you conducted into Mr. Al Bakri's business affairs prior to detention? If you do please forward that to me so I can include that as an exhibit.

Also, if you could provide a written statement regarding my questions listed above that could be very important if we're not able to make a connection with you during the board, so at least the board members would be able to read the testimony you have to offer. And just so you know, there is no guarantee that you'd be able to testify, I can only try to call you as a witness but it will be up to the board president to decide whether he wants to hear your testimony or not.

Again, I appreciate your assistance, and any additional information or paperwork you have to share would be greatly appreciated. I look forward to your testimony at the board.

Very Respectfully,

LT Todd Beatty, USN
Personal Representative
Legal Operations Directorate
CJIATF-435 Parwan, Afghanistan

-----Original Message-----
From: Ramzi Kassem
Sent: Wednesday, February 16, 2011 5:20 AM
To: Beatty, Todd M USN LT JTF 435
Cc: Bond, Margaret S USA COL USA DFIP; golnaz.fakhimi@live.law.cuny.edu; jillian.sebastian@live.law.cuny.edu; isabelle.rogin@live.law.cuny.edu
Subject: RE: Amin Al Bakri (UNCLASSIFIED)

Dear Lt. Beatty,

Please find attached some of the materials discussed on our call today, for your review and for submission to the DRB in Mr. al-Bakri's case. These include a letter from the Yemeni Minister of Foreign Affairs stating that the Government of Yemen would welcome Mr. al-Bakri's repatriation to Yemen and would not object to his resettlement in the Kingdom of Saudi Arabia, where a large part of his immediate family resides. Kindly pass along copies to Mr. al-Bakri as well.

More materials to come...

Again, it was a pleasure speaking with you today. Thank you for your hard work.

Best,

Ramzi Kassem

# ATTACHMENT 8
**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

بسم الله الرحمن الرحيم

الجمهورية اليمنية
وزارة الخارجية
مكتب الوزير

الرقم: ١/١٠٢/١٥٦/١٤٣٩
التاريخ: ..........
الموافق: ١/١١/٢٠٠٩م

الأخ عبدالوهاب عبدالله الحجري المحترم

سفير الجمهورية اليمنية-واشنطن

تحية طيبة وبعد ،،،

تعقيبا على مذكراتنا السابقة إليكم واستكمالا للتواصل معكم ومع الصليب الأحمر ومع السفارة الأمريكية بصنعاء بشأن موضوع المعتقلين اليمنيين في قاعدة باجرام الجوية بأفغانستان **أمين البكري وفادي المقالح**، وفي سياق تواصل والد المعتقل اليمني أمين محمد البكري مع المحامي الموكل بالترافع عن أمين البكري فأننا نأمل في قيام السفارة بالتعاون مع المحامي السيد **رمزي قاسم** فيما من شأنه سرعة إطلاق سراح المعتقل أمين البكري ، معبرين عن استعدادنا لاستقباله في اليمن وعدم ممانعتنا اذا رغب في العودة إلى السعودية حيث يقيم والداه.

وتقبلوا خالص التقدير ،،،

أبوبكر عبدالله القربي

١٠/٢٠٠٩

وزير الخارجية

الجمهورية اليمنية
وزارة الخارجية

| | | |
|---|---|---|
| The Republic of Yemen | In the Name of God Most Gracious Most Merciful | No.:1/102/156/1439 |
| Ministry of Foreign Affairs | [Logo] | Date:……………………… |
| Minister's Office | | Corresponding to November 10, 2009 AD |

Dear Abdul Wahab Abdullah Al-Hajri

Ambassador of the Republic of Yemen in Washington DC

Following up on our previous letters to you and in continuation of correspondence with you, the Red Cross and the American Embassy in Sanaa regarding the issue of Yemeni detainees in Bagram Airbase in Afghanistan, **Amin Al-Bakri** and **Fadi Al-Maqaleh,** and concerning the communication between the father of Yemeni detainee Amin Mohammad Al-Bakri with the latter's defense lawyer, we hope that the embassy will cooperate with the lawyer **Ramzi Kassem** in order to ensure prompt release of detainee Amin Al-Bakri. We hereby express our willingness to receive him in Yemen and we have no objection to his wish should he decide to return to Saudi Arabia where his parents reside.

Best Regards,

Abu Bakr Abdullah Al-Qirbi [Seal]
[Signature]
November 10, 2009
Minister of Foreign Affairs

# ATTACHMENT 9

**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

-----Original Message-----
From: Bond, Margaret S USA COL USA DFIP
Sent: Thursday, February 17, 2011 9:04 AM
To: ramzi.kassem@mail.law.cuny.edu
Subject: RE: Amin Al Bakri (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: FOUO

I'm not sure our phone system here at the DFIP can reach outside Afghanistan, except back to the states. I was hoping Mr. AlKatheri could give us his US cell phone number.

-----Original Message-----
From: Ramzi Kassem [mailto:ramzi.kassem@mail.law.cuny.edu]
Sent: Thursday, February 17, 2011 5:58 PM
To: Bond, Margaret S USA COL USA DFIP
Cc: Beatty, Todd M USN LT JTF 435
Subject: RE: Amin Al Bakri (UNCLASSIFIED)

Hello, Col. Bond,

Mr. al-Kathiri is wondering why he has not received a call from the Board yet. I suppose it's a connection problem but I promised him I'd inquire.

Best,

Ramzi Kassem

# ATTACHMENT 10

**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

**DRB RESULTS NOTICE: Transfer to Third Country Government Officials, Release**

1. It has been determined by the Detainee Review Board that you will be transferred to your home country for release as soon as practicable.

2. Your transfer may take some time to process. Please be patient while arrangements are being made.

3. Do you understand everything and would you like a written copy?

NOTIFIED BY: ____________ SIGNATURE: X ____________



1464

THUMBPRINT

DATE: 31 Oct 2010

# ATTACHMENT 11

**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

UNCLASSIFIED//~~FOUO~~

**DEPARTMENT OF DEFENSE**
HEADQUARTERS, COMBINED/JOINT TASK FORCE-82
BAGRAM AIRFIELD, AFGHANISTAN
APO AE 09354

REPLY TO
ATTENTION OF:

CJTF-82

MEMORANDUM FOR Commander, Detainee Operations, Task Force Protector, Bagram Airfield, Afghanistan, APO AE 09354

SUBJECT: 9 December 2009 Detainee Review Board (DRB) Recommendation for Continued Internment Approval/Disapproval

1. I have reviewed the findings and recommendation of the DRB conducted on 9 December 2009 concerning the internment of Detainee ISN 1815. After careful consideration, I direct the DRB's recommendation that ISN 1815 continue to be detained at the Bagram Theater Internment Facility as an Enduring Security threat be:

CKKC Approved

___ Disapproved

2. The point of contact for this memorandum is CPT (b)(3):10 U.S.C. 130 (b),(b)(6) TF Protector, at DSN (b)(2) (b)(2) or (b)(2),(b)(3):10 U.S.C. 130(b),(b)(6).

CLARENCE K. K. CHINN
Brigadier General, USA
Deputy Commanding General,
Support

UNCLASSIFIED//~~FOUO~~

# ATTACHMENT 12
**to Declaration of Ramzi Kassem**
**(dated June 22, 2011)**

UNCLASSIFIED/~~FOUO~~

**DEPARTMENT OF DEFENSE**
HEADQUARTERS, COMBINED/JOINT TASK FORCE-82
BAGRAM AIRFIELD, AFGHANISTAN
APO AE 09354

REPLY TO
ATTENTION OF:

CJTF-82

DEC 24 2009

MEMORANDUM FOR Commander, Detainee Operations, Task Force Protector, Bagram Airfield, Afghanistan, APO AE 09354

SUBJECT: 2 December 2009 Detainee Review Board (DRB) Recommendation for Continued Internment Approval/Disapproval

1. I have reviewed the findings and recommendation of the DRB conducted on 2 December 2009 concerning the internment of Detainee ISN 1466. After careful consideration, I direct the DRB's recommendation that ISN 1466 continue to be detained at the Bagram Theater Internment Facility as an Enduring Security threat be:

CKKC Approved

___ Disapproved

2. The point of contact for this memorandum is CPT [redacted] (b)(3):10 U.S.C. 130(b),(b)(6) TF Protector, at DSN [redacted] (b)(2) [redacted] (b)(2) or [redacted] (b)(2),(b)(3):10 U.S.C. 130(b),(b)(6)

CLARENCE K. K. CHINN
Brigadier General, USA
Deputy Commanding General,
Support

UNCLASSIFIED/~~FOUO~~